## FARMERS INSURANCE ASSOCIATION OF MADISON COUNTY *v.* REAVIS ET AL.

[No. 20,247. Filed April 6, 1904. Rehearing denied October 7, 1904.]

INSURANCE.—*Condition Broken.*— *Waiver.*—Where a director and agent of an insurance company solicits insurance and delivers a policy and collects for same, knowing that the insured is using gas in violation of a provision of the policy, and reports the same to the company, and thereafter such company collects further assessments on such policy, such provision is waived by such company, and it will not be heard to interpose a defense founded upon such violation. *pp. 325-327.*

TRIAL.—*Verdict.*—*Interrogatories to Jury.*—It is improper to submit an interrogatory to the jury asking on which paragraph of complaint they find their verdict, since this must be ascertained through the medium of the general verdict. *p. 324.*

ACCOUNT STATED.—*Insurance Loss.*—Where a policy of insurance covers many different articles, and the parties fix the different values of articles destroyed, and the company agrees to pay such amount, an action may be maintained as on an account stated.  *pp. 327, 328.*

TRIAL.—*General Verdict.*—*Special Interrogatories.*—Where a general verdict is returned in favor of the insured on an account stated for loss of property covered by a fire policy, and an interrogatory shows that at a certain date such company did not admit the liability nor agree to pay, such interrogatory is not in irreconcilable conflict with the general verdict, since it does not show that such company did not at some other time agree to pay such loss.  *p. 329.*

From Delaware Circuit Court; *J. G. Leffler*, Judge.

Action by Jesse F. Reavis and wife, Mary J. Reavis, against the Farmers Insurance Association of Madison County for damages for loss by fire, covered by a policy of insurance. From a judgment on a general verdict of a jury for $659.21, the defendant appeals. Transferred from the Appellate Court under §1337u Burns 1901. *Affirmed.*

*W. A. Kittinger* and *W. S. Diven*, for appellant.

*W. L. Ball, A. E. Needham, A. C. Carver* and *Guy Ballard*, for appellees.

HADLEY, J.—Appellees sued appellant in two paragraphs. By the first, they seek to recover on a fire insurance policy the value of the property destroyed, and by the second, they seek recovery upon an account stated. Upon the issues joined there was a trial by jury, and with a general verdict in favor of appellees the jury returned answers to a large number of interrogatories. The overruling of appellant's motion for judgment in its favor on the answers to the interrogatories notwithstanding the general verdict, and the sustaining of appellees' motion for judgment on the general verdict, are the only questions presented for decision.

The material facts, as shown by the answers to interrogatories, are as follows: Appellant is a mutual insurance company. Its board of directors consisted of one member from each township of the county. It was the duty of each

Farmers Ins. Assn. v. Reavis.

director to receive all applications for insurance in his respective township, make surveys and estimates of value of property to be insured, collect all fines and assessments, on account of losses, made upon members holding insurance in his township, and to keep a record of all transactions in regard to membership and insurance in his said territory. All resident owners of farm property are eligible to membership in said association upon paying a fee of $5 and agreeing to pay all assessments on account of losses. In case of a loss it was the duty of the secretary of the company without delay to examine the premises, "and after taking such steps as he may deem necessary for the purpose, he shall determine the amount of the loss sustained." A by-law of the company in force at the time of the insurance provides: "Section 13. All members of this association using gas are required to have good regulators at their houses, and the pipes that are in their houses clear of leaks. The association is not responsible for any loss that may occur by fire if these requirements are not complied with." On May 28, 1894, appellant wrote a policy of insurance upon the dwelling-house and contents of appellees. John L. Thomas at the time was the secretary of appellant, and Perry Heritage a director for the township in which the property insured was situate. Heritage, as township director, solicited and prepared appellees' application for insurance, and was at the time informed that appellees were burning gas from a high-pressure line without a regulator. The property was destroyed by fire December 8, 1896. During all the period from the issuing of the policy to the destruction of the property Heritage knew that appellees were using gas without a regulator, and prior to December 23, 1896, reported the same to the company, and with such knowledge during all of said time continued to and did assess, collect, and receive from appellees all assessments and premiums accruing upon said policy. Three days after the fire Heritage, as director, and John L. Thomas, as secretary

of the company, visited appellees' premises, and took down a list of the property claimed to be destroyed, and fixed the value thereto, after which appellee Jesse F. Reavis inquired of Thomas when they should get their money, and the latter answered that the company would take thirty days to investigate, and if it found nothing crooked or wrong the company would pay the money at the end of that time. The value of the insured property destroyed was $517, and the value of the property insured was $1,200. Appellees, after April 6, 1896, at no time procured from the company a permit to use gas from a high-pressure line. At the time and before the fire appellees supplied their lights and cooking stove with gas through a low-pressure regulator, and their sitting-room grate with gas from a high-pressure line through a three-eighths pipe without a regulator.

Appellant grounds its defense on appellees use of natural gas from a high-pressure line without a regulator, in violation of the company's by-laws. Appellees seek to avoid the answers by replying that the company solicited, accepted, and continued appellees' risk, and demanded, collected, and retained from them all premiums and assessments, with full knowledge that they were supplying their grate from a high-pressure line without a regulator other than double key valves.

Among its other findings, the jury answered, in response to an interrogatory, that its verdict was based on the second paragraph of complaint. Appellant's first contention is that this was equivalent to a finding for the defendant on the first paragraph, and as the other findings. show there was no account stated between the parties, as alleged in the second paragraph, there is, therefore, no basis for the general verdict to rest upon, and it must fall. The interrogatory in question should not have been submitted to the jury. The answer called for was not such a fact on the issues of the cause as is contemplated by §555 Burns 1901,

and being unauthorized by the statute must be treated as surplusage. *Clear Creek Stone Co.* v. *Dearmin* (1903), 160 Ind. 162; *Consolidated Stone Co.* v. *Morgan* (1903), 160 Ind. 241; *Salem-Bedford Stone Co.* v. *Hilt* (1901), 26 Ind. App. 543. If such a finding is desirable it should be sought through the medium of the general verdict.

We must not lose sight of the fact that in testing all questions of conflict between the general verdict and special findings of the jury we must assume that every fact provable under the issues, which is essential to the support of the general verdict, was by the jury found established. This rule has been affirmed so often that we deem it unprofitable to cite cases.

It is insisted that the use of gas by appellees in their grate without a good regulator, in violation of section thirteen of the company's by-laws, forfeited their right of recovery. While it is true that the answers to interrogatories show that the by-laws provided that members—or insured persons—were "required to have good regulators at their houses," and that in default of which the association would not be liable for any loss by fire, it is also shown by such answers that a director of appellant, whose duty it was to solicit, supervise, and accept all insurance in his township, and to collect the initiation fee, and all fines and assessments that should be levied against the policy, and to keep a record of all the company's business in his township, and who did solicit appellees' insurance, and did prepare, approve, and accept appellee's application, and forward the same to the secretary of the company for an issuance of the policy, was at the time of taking such application fully informed by appellees that they were using gas without a regulator. It also appears that this information was, by the director, prior to December 23, 1896—which we must presume was at the time of forwarding the application—reported to the company. It is still further shown

that, after being thus informed, and continuing so informed from the date of the policy to the time of the loss, the company continued to demand, collect, and retain all regular premiums and assessments made against appellees' policy prior to the burning of their property. Having, with knowledge of the broken condition, demanded and collected the assessments, appellant, with the money in its possession, will not be heard to say that appellees had no insurance for the money that was paid. When the company received notice that appellees were using gas without a regulator, it might have refused to issue the policy, or, if such notice was received after the policy had been issued, it might have declined to make further assessments or receive further payments, and canceled the policy; but having gone on making and collecting assessments, and holding out to the insured the reasonable belief that the policy was valid, the company will not now be permitted to insist upon a forfeiture.

"It is abundantly settled," said Mitchell, J., in *Havens* v. *Home Ins. Co.* (1887), 111 Ind. 90, 60 Am. Rep. 689, "that, nothwithstanding conditions in the policy, if at the time the insurance was effected, or afterwards, there were conditions, uses or incidents of the risk, which were in conflict with conditions in the policy, and which were known to the insurer, or its agent, whose knowledge is imputable to the company, such conditions, uses or incidents, can not be used to defeat a recovery after a loss has occurred. Issuing or continuing a policy of insurance, with full knowledge by the company of existing facts, which, according to a condition of the contract, make it voidable, is a waiver of the condition." See authorities collected on page 92 of that case. See, also, *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624; *Northwestern, etc., Assn.* v. *Bodurtha* (1899), 23 Ind. App. 121, 77 Am. St. 414.

It follows that the special finding of the jury that appellees were using gas without a regulator was not in conflict

with the general verdict, and appellant's motion for judgment was properly overruled.

Judgment affirmed.

## ON PETITION FOR REHEARING.

HADLEY, J.—Counsel for appellant complain that we misstated the record, and avoided the decision of a question relied upon for a reversal. For the sake of clearness we will restate that the case was tried upon a complaint consisting of two paragraphs: The first, on a policy of insurance, the second, on an account stated. To an interrogatory propounded to them the jury answered that they found for the plaintiffs on the second paragraph of the complaint. The jury, also, in their general verdict stated that their finding for the plaintiffs was on the second paragraph of the complaint.

The only errors relied upon for reversal, as stated in appellant's brief, are (1) the overruling of appellant's motion for judgment in its favor on the interrogatories and answers thereto, notwithstanding the general verdict, and (2) the sustaining of appellees' motion for judgment on the general verdict.

The fact that the general verdict specified the particular paragraph of the complaint upon which it rested escaped our attention, and we disposed of the point as if the fact was only disclosed by an answer to an interrogatory. We regret the inadvertence, and gladly embrace the opportunity afforded by the petition for a rehearing to amend it.

Appellant's contention is (1) that the cause of action does not admit of an account stated, and (2) that the answers to interrogatories show that there was no account stated between the parties. Conceding the claim that a finding for the plaintiffs on a particular paragraph was equivalent to a finding for the defendant on the other paragraph, this fact will not invalidate the judgment before us,

unless it is conclusively shown by the special findings that there was no account stated between the parties as a basis for the judgment. The fact that the plaintiffs' claim arose from the loss, by fire, of property covered by a policy of insurance issued by the defendant, is not of itself sufficient to defeat an action on an account stated. If a large number of articles insured under the plaintiffs' policy were destroyed by fire—as appears from the special findings to have been the case—and the various items were by the plaintiffs and defendant—through its authorized agents—considered, and the value of such articles fixed, and the aggregate amount thus reached was agreed by the parties to be the correct amount due the plaintiffs from the defendant, and the defendant agreed to pay such sum in discharge of the claim, we perceive no reason why the plaintiffs may not, if they choose, maintain an action as for an account stated on such claim.

"It is advisable," says Mr. Chitty, "in all declarations in assumpsit for the recovery of a money demand (excepting against an infant, who can not in law state an account), to insert a count on an account stated. The acknowledgment by the defendant that a certain sum is due, creates an implied promise to pay the amount, and it is not necessary to set forth the subject-matter of the original debt * * * or that there should have been cross-dealings or accounts between the parties. The present rule is, that if a fixed and certain sum is admitted to be due to a plaintiff, for which an action would lie, that will be evidence to support a count upon an account stated." 1 Chitty, Pleading (4th Am. ed.), *358, *359.

The case, as to the questions now involved, stands thus: In their complaint the plaintiffs added a second paragraph on an account stated, in which they sue the defendant for a specific sum which they allege was the result of an accounting between them, and which the defendant agreed to pay. The jury found by their general verdict that under

all the evidence produced the plaintiffs had established the second paragraph of their complaint. In the absence of a finding to the contrary, we must assume that everything essential to the support of such verdict was sufficiently proved. An isolated fact disclosed by an answer to an interrogatory will not be admitted to overthrow a general verdict if any other controlling fact relating to the same subject might have been established under the issues. Such an isolated fact, or special finding, to overcome the general verdict, must be of a nature so inherently incompatible with the right of recovery as to exclude the possible existence of other supporting facts which might have been proved. *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 54 L. R. A. 396, 83 Am. St. 200, and cases cited.

Appellant argues that the absence of any accounting is shown by the following interrogatories and answers: "(22) Did Perry Heritage, as director, and John L. Thomas, as secretary, of the defendant company, visit the home of the plaintiffs on the 11th day of December, 1896, and there take down plaintiffs' statement as to what they claimed was destroyed by fire? Ans. Yes. (23) After Heritage and Thomas, at the time named, had taken down the list of property which plaintiffs claimed had been destroyed, and its value, did Jesse Reavis then ask, 'When will I get my money,' and Thomas answer that they would take thirty days in which to investigate, and to ascertain whether there was any crookedness, or anything wrong, and if they found everything all right he would get his money in thirty days? And was that all that was said concerning the question? Ans. Yes, except plaintiff said 'I need my money.'" Assuming that both branches of interrogatory twenty-three (which should not have been submitted to the jury for being double) were answered in the affirmative, such answers by no means go to the extent of finding that there was no settlement and agreement between the parties, prior to the suit, in respect to the amount due the plaintiffs

from the defendant on account of the loss of their property by fire. The answers at most only cover what was said and done between one of the plaintiffs and certain officers of the company at a particular time, or on a particular day. There is not, from what is disclosed, the slightest suggestion that an adjustment of plaintiffs' loss, and a promise by the defendant to pay the sum sued for, did not take place at some other time. We must therefore presume, in support of the general verdict, that the jury found that such settlement and promise did take place at some other time, under circumstances not to be affected by what they found took place on December 11.

Upon further consideration we find no error in the record, and the petition for a rehearing is overruled.